UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MICHAEL HOOTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00379-JPH-DML |
| | ) | |
| R. VANVLEET et al., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Hooten, an Indiana Department of Correction ("IDOC") inmate, alleges that Defendants Randall Vanvleet and Matt Leohr failed to protect him from being attacked by his cellmate in violation of the Eighth Amendment. Dkt. 19. Defendants have moved for summary judgment. For the reasons explained below, the motion, dkt. [92], is **granted**.

## I.
## Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to

consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Hooten and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. Parties

At all times relevant to Mr. Hooten's allegations, he was an IDOC inmate housed at Wabash Valley Correctional Facility. Dkt. 11 at 1 (Amended Complaint). Mr. Hooten suffers from a very progressive form of multiple sclerosis ("MS"). *Id.* at 4.

Defendant Matt Leohr is the Supervisor of Classification at Wabash Valley, Dkt. 93-4 at 1 (Leohr Affidavit). Defendant Randall Vanvleet is identified as the Office of Investigations and Intelligence ("OII") Supervisor and is not a classification staff member. Dkt. 11 at 1; dkt. 93-3 at 2–4 (Vanvleet affidavit).

**B. Mr. Hooten's Relevant Location History**

Mr. Hooten was housed in Lincoln House ("L-House") at Wabash Valley. Dkt. 93-3 at 1. In L-House, Mr. Hooten engaged in manipulative and disruptive behavior, including harassing medical staff, and manipulating an officer into giving him a Little Debbie snack. *Id.* As a result, on January 5, 2024, Mr. Vanvleet transferred Mr. Hooten to George House ("G-House"). *Id.* at 1-2. Mr. Vanvleet testified that he approved the move because the environment in G-House is more controlled and would reduce Mr. Hooten's opportunities to cause problems and help maintain order. *Id.* at 1-2. G-House was not a restricted housing unit. *Id.* at 2. Inmates in G-House came out in smaller groups for recreation and meals but otherwise retained full privileges of general population. *Id.*

Mr. Hooten was transferred from G-House to Frank House ("F-House") on March 21, 2024. Dkt. 93-4 at 2. Neither Mr. Vanvleet nor Mr. Leohr authorized, directed, or were otherwise involved with Mr. Hooten's transfer to F-House. Dkt. 93-4 at 2; dkt. 93-3 at 3. This transfer appeared on a movement sheet with approximately twenty other bed moves submitted by a Correctional Sergeant responsible for coordinating daily institutional movement. Dkt. 93-4 at 2. In F-House, Mr. Hooten was assigned a cellmate through the routine cell-assignment

process. *Id.* Neither Mr. Vanvleet nor Mr. Leohr approved or selected Mr. Hooten's cellmate assignment. Dkt. 93-3 at 2-3; dkt. 93-4 at 2.

**C. April 5, 2024 Altercation**

Mr. Hooten alleges he was attacked by his cellmate on April 5, 2024. Dkt. 11 at 5; dkt. 93-1 at 15. Mr. Hooten reports he had teeth injuries, a concussion, and a black eye after the incident. Dkt. 93-1 at 20-21. He filed a grievance on April 8 stating that he had been attacked by his cellmate over the weekend. Dkt. 93-2 at 38 (Grievances). This grievance was returned by the grievance specialist on the grounds that classification actions like bed moves, change in security level, and facility transfers should be raised in a classification appeal. *Id.* at 37. There is no evidence that Mr. Hooten gave Mr. Vanvleet or Mr. Leohr copies of the grievance or that they were otherwise aware of this grievance before the April 11 altercation between Mr. Hooten and Mr. Majors. *See id.*

**D. April 11, 2024 Altercation**

On April 11, 2024, Mr. Hooten was involved in a physical altercation with his cellmate, Mr. Majors. Dkt. 93-4 at 2-3. The official incident and disciplinary reports prepared by facility staff document that Mr. Majors sustained multiple puncture-type stab wounds and needed to go to the hospital for emergency medical treatment. *Id.* at 2-3. Mr. Hooten was then moved to restrictive housing ("the SHU"), consistent with IDOC policy requiring separation of offenders involved in a violent incident. Dkt. 93-3 at 3. Mr. Vanvleet did not determine which inmate remained in the original cell and which was moved. *Id.*

Before the attack, neither Mr. Vanvleet nor Mr. Leohr had knowledge of any safety concern about Mr. Hooten sharing a cell with Mr. Majors. Dkt. 93-3 at 2-3; dkt. 93-4 at 2-3. Defendants first became aware of a problem between Mr. Hooten and Mr. Majors after the April 11 incident, when they reviewed the disciplinary and incident reports describing the physical altercation. Dkt. 93-3 at 2-3; dkt. 93-4 at 2-3.

A disciplinary process was initiated against Mr. Hooten for battery on another offender. Dkt. 93-3 at 3; dkt. 93-4 at 2-3; dkt. 110-1 at 3. He was found guilty of stabbing his cellmate and issued 90 days of disciplinary status restricted housing time. Dkt. 93-4 at 3. After his disciplinary segregation term, Mr. Hooten remained in Administrative Segregation until August 11, 2025, when he was transferred to a different correctional facility. Dkt. 93-4 at 3-4.

## III.
## Discussion

Mr. Hooten brings an Eighth Amendment claim against the Defendants, alleging that they failed to protect him from being attacked by Mr. Majors. Dkt. 19.

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty if they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Hooten must show that (1)

Defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

A defendant had actual knowledge of impending harm if the plaintiff complained to him about "a specific threat to his safety." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). But "[c]omplaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* at 480–81; *see Dale*, 548 F.3d at 569 ("[A]s the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases."). By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas*, 798 F.3d at 481 (officers had notice that plaintiff was in danger of being attacked when plaintiff told them about an individual who repeatedly threatened to stab him and had remarked that he had snitched on a prior cellmate). A defendant cannot be held liable for knowing general risks of violence in prisons. *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005).

Mr. Hooten has not designated evidence showing that either Mr. Vanvleet or Mr. Leohr were aware of any substantial risk of serious harm to him, from Mr. Majors or anyone else, in April 2024. Mr. Hooten argues that Defendants should

have been aware of general risks to his safety because of his housing location, MS condition, and/or his cellmate's conduct history. Knowledge of such general risks, however, are insufficient to hold a prison official responsible for an inmate being attacked by another inmate. *See Borello*, 446 F.3d at 747. In a prison, there is almost always a heightened risk of violence. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) ("[A] general risk of violence in a maximum security unit does not by itself establish knowledge of a substantial risk of harm.").

Mr. Hooten also argues that Defendants should have been aware of the April 5 attack before the April 11 attack when he was "forced to defend himself," and Mr. Majors ended up with multiple stab wounds. Dkt. 93-4 at 2-3; dkt. 110 at 5, 6-7. But Mr. Hooten does not designate evidence or argue that he informed Mr. Vanvleet or Mr. Leohr of the April 5 attack, or that he informed them of a specific risk to his safety from Mr. Majors.

The designated evidence therefore does not allow a reasonable jury to find that Defendants failed to protect Mr. Hooten from an attack by Mr. Majors. In *Haley v. Gross*, for example, the defendants knew that the plaintiff's cellmate had threatened him multiple times and knew that the plaintiff was "deadlocked" in his cell with him overnight. 86 F.3d 630, 642–43 (7th Cir. 1996). And in *Gevas*, the plaintiff "identified the individual threatening him (Adkins), the nature of the threat (that Adkins would stab him), and supplied context that rendered the threats plausible (including Adkins's remark that Gevas had 'snitched' on a prior cellmate)." 798 F.3d at 481. Mr. Hooten, by contrast, has not designated evidence

from which a reasonable jury could conclude that either Defendant knew of a specific or credible threat to his safety. *See Dale*, 548 F.3d at 569 ("[A] prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate. Prisons, after all, are dangerous places often full of people who have demonstrated aggression. And so, an inmate has no claim unless the official knows of and disregards an excessive risk."). Mr. Vanvleet and Mr. Leohr are therefore entitled to summary judgment[1].

## IV.
## Conclusion

Defendants' motion for summary judgment **GRANTED**. Dkt. [92]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/4/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL HOOTEN
988796
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel

[1] Because the Court finds that no reasonable jury could find in Mr. Hooten's favor as to the merits of his claims, it need not address the qualified immunity defense.